UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION and AMERICAN CIVIL LIBERTIES UNION FOUNDATION,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>NATIONAL SECURITY AGENCY, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, CENTRAL INTELLIGENCE AGENCY, and DEPARTMENT OF JUSTICE,<br><br>    *Defendants*. | **COMPLAINT FOR INJUNCTIVE RELIEF**<br><br>Case No. 23-cv-907 |

**INTRODUCTION**

1. This action under the Freedom of Information Act ("FOIA") seeks the timely release of agency records concerning Section 702 of the Foreign Intelligence Surveillance Act—a sweeping law that authorizes the warrantless surveillance of international communications. The government uses Section 702 to amass vast amounts of internet and telephone communications each year, including many communications involving Americans. Recent opinions issued by the Foreign Intelligence Surveillance Court ("FISC") address novel or significant issues raised by the agencies' applications to conduct Section 702 surveillance, and directly implicate Americans' privacy rights. Immediate disclosure of these records is critical to informing public debate as Congress weighs whether to reauthorize the law when it expires this year.

2. Plaintiffs, two non-profit, non-partisan civil liberties advocacy organizations, submitted a FOIA request (the "Request") to the National Security Agency, Office of the Director

of National Intelligence, Central Intelligence Agency, and Department of Justice on December 22, 2022, seeking the release of these FISC opinions. To date, none of these Defendant agencies has released any responsive records, notwithstanding the FOIA's requirement that agencies respond to requests within twenty working days.

3. Section 702 is set to expire in December 2023. In the coming months, Congress will consider whether to reauthorize these surveillance powers and will newly examine the breadth and intrusiveness of the digital searches the government conducts under this authority.

4. In 2021, the FISC took the unusual step of extending its review of the government's annual Section 702 application, in order to consider novel or significant issues raised by the proposed surveillance. But the government has not released the court opinions that resulted from that review, even though they bear directly on the public's understanding of the surveillance powers the government seeks to wield under Section 702.

5. Timely disclosure of these FISC opinions is vitally necessary to an informed debate about whether these surveillance powers should be reauthorized or reformed.

6. Plaintiffs now ask the Court for an injunction requiring Defendants to process the Request immediately. Plaintiffs also seek an order enjoining Defendants from assessing fees for the processing of the Request.

## JURISDICTION AND VENUE

7. The Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–06.

8. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**PARTIES**

9. Plaintiff American Civil Liberties Union is a nationwide, non-profit, nonpartisan 26 U.S.C. § 501(c)(4) organization, incorporated in the District of Columbia and with its principal place of business in New York City. The American Civil Liberties Union's mission is to maintain and advance civil rights and civil liberties and to ensure that the U.S. government acts in compliance with the Constitution and laws of the United States. The American Civil Liberties Union is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the American Civil Liberties Union's work and one of its primary activities.

10. Plaintiff American Civil Liberties Union Foundation is a separate 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. It is incorporated in New York State and its principal place of business is in New York City.

11. Plaintiffs together are referred to as the "ACLU."

12. Defendant National Security Agency ("NSA") is an intelligence agency established within the executive branch of the U.S. government and administered through the Department of Defense. The NSA is an agency within the meaning of 5 U.S.C. § 552(f)(1).

13. Defendant Office of the Director of National Intelligence ("ODNI") is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

14. Defendant Central Intelligence Agency ("CIA") is an intelligence agency established within the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

15. Defendant Department of Justice ("DOJ") is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). The National Security Division ("NSD"), from which the ACLU has requested records, is a component of the DOJ.

## FACTUAL BACKGROUND

### Section 702 of the Foreign Intelligence Surveillance Act

16. Section 702 authorizes the widespread collection of Americans' international communications without a warrant. *See* 50 U.S.C. § 1881a. While this surveillance is ostensibly "targeted" at foreigners located overseas, the government uses this authority to acquire the internet communications and phone calls of Americans who are in contact with hundreds of thousands of foreign targets.

17. The statute is extraordinarily permissive. It allows agency analysts to collect the communications of *any* non-U.S. person abroad where a "significant purpose" is to acquire "foreign intelligence," a broad and elastic category. 50 U.S.C. §§ 1881a, 1801. This warrantless surveillance is permitted even if there is an American on one end of the communications. Whenever the government's targets—who may be journalists, academic researchers, scientists, or businesspeople abroad—communicate with a person in the United States, those communications are subject to interception and retention under Section 702.

18. In practice, the government uses this authority to seize and search the communications of Americans and others on an immense scale. Government disclosures indicate

that, as of 2011, the NSA collected more than 250 million internet communications under Section 702 annually. As the number of Section 702 targets has grown since then—to include more than 232,000 individuals, groups, and organizations—the NSA now likely collects over a billion communications each year.

19. Since its enactment, Section 702 has been the subject of widespread public controversy, given its impact on the privacy, free expression, and associational rights of Americans.

20. Section 702 permits the government to obtain the communications of Americans without a finding of probable cause or any suspicion of wrongdoing at all. Rather than applying for individualized warrants, the government submits annual certifications to the Foreign Intelligence Surveillance Court ("FISC") describing the general procedures and guidelines it intends to follow in conducting the surveillance. The government does not identify its individual targets or the various places and facilities at which its surveillance will be directed. 50 U.S.C. §§ 188la(a), 188la(g)(4).

21. The statute's safeguards are limited to the requirement that each agency adopt procedures that are reasonably designed to minimize the acquisition and retention, and prohibit the dissemination of U.S. persons' information. *See* 50 U.S.C. § 1881a(j)(2)(C) (referencing 50 U.S.C. §§ 1801(h)(l), 1821(4)(A)). These procedures, however, grant the government wide latitude to seize, search, analyze, and use the communications of Americans.

22. The FISC's role in reviewing the surveillance is narrowly circumscribed. It is limited to approving the general procedures and the annual certifications; the FISC does not approve the government's interception of individual Americans' communications.

23. The government routinely relies on warrantless surveillance under Section 702 to investigate individual Americans. Communications collected under Section 702 are amassed in government databases, where intelligence analysts and criminal investigators can conduct queries seeking the private messages, emails, and internet chats of Americans.

24. The scale of these intrusions is vast: FBI agents alone conduct millions of U.S. person queries—or "backdoor searches"—each year. Indeed, agents around the country can generally search for and read through U.S. persons' private communications without needing to obtain even a supervisor's approval.

25. Congress last authorized Section 702 in 2018, following an extensive public and legislative debate. Because of the privacy and civil liberties concerns raised by this sweeping surveillance, Congress imposed a new sunset date in 2023.

26. Despite the breadth and intrusiveness of this surveillance regime, the public lacks critical information about how Section 702 surveillance has expanded and evolved in recent years—information that is essential for a meaningful debate about whether the statute should be reauthorized.

27. Behind closed doors, the FISC has been examining novel or significant issues related to the government's Section 702 applications since at least late 2020. Although the FISC typically issues at least one order approving the government's Section 702 certification each year, the court declined to issue any Section 702 orders in 2021. Instead, the FISC extended its review of the government's proposed surveillance. It also appointed outside amici to assist in that review, as Congress has mandated when the government's surveillance applications present "novel or significant" questions of law. 50 U.S.C. § 1803(i)(2).

28. The opinions issued by the FISC as a result of this review have not been released to the public—notwithstanding a statutory requirement that the government publicly release "to the greatest extent practicable" FISC opinions addressing novel or significant issues. 50 U.S.C. § 1872.

29. Without access to these opinions, the public has no insight into the kinds of novel surveillance Defendants are seeking to conduct under Section 702, the impact that surveillance may have on the rights and civil liberties of Americans if Section 702 is reauthorized, and the reforms that may be required to safeguard Americans' privacy. This information is vital for the public and legislative debate that is already getting underway.

## The FOIA Request

30. On December 22, 2022, the ACLU submitted the Request to Defendants, seeking "all FISC or FISCR [Foreign Intelligence Surveillance Court of Review] opinions or orders dated on or after January 1, 2021, that address novel or significant issues, including but not limited to novel or significant issues concerning Section 702 surveillance."

31. Plaintiffs sought expedited processing of the Request on the ground that there is a "compelling need" for these records because the information requested is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged federal government activity. 5 U.S.C. § 552(a)(6)(E).

32. Plaintiffs sought a waiver of search, review, and reproduction fees on the ground that disclosure of the requested records is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

7

33. Plaintiffs also sought a waiver of search and review fees on the grounds that the ACLU qualifies as a "representative of the news media" and that the records are not sought for commercial use. *Id*. § 552(a)(4)(A)(ii).

### Defendants' Responses to the Request

34. Despite the urgent public interest regarding government surveillance activities, Defendants have not released any records in response to the Request.

35. Under FOIA, Defendants have twenty working days to respond to a request. 5 U.S.C. § 552(a)(6)(A)(i).

36. If there are "unusual circumstances," an agency may extend the time limit by no more than ten working days. *Id*. § 552(a)(6)(B)(i). To invoke that extension, the agency must provide "written notice . . . setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id.*

37. An agency can extend its processing time beyond the additional ten days only if it provides written notice and "an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." *Id*. § 552(a)(6)(B)(ii).

38. More than twenty working days have passed since Plaintiffs filed the Request and no Defendant has provided the written notice required for an extension. Thus, the statutory time period has elapsed.

### National Security Agency

39. By letter dated December 29, 2022, the NSA acknowledged receipt of the Request and assigned it tracking number 11544.

40. The letter denied Plaintiffs' request for expedited processing and deferred decision on Plaintiffs' request for a fee waiver.

41. By letter dated January 25, 2023, the NSA stated that the Request "has been placed in the first-in, first-out processing backlog queue."

42. To date, the NSA has neither released responsive records nor explained its basis for withholding them. Plaintiffs have exhausted all administrative remedies because the NSA has failed to comply with the time limit for responding to the Request under the FOIA.

Office of the Director of National Intelligence

43. By letter dated December 29, 2022, the ODNI acknowledged receipt of the Request and assigned it tracking number DF-2023-00066.

44. The ODNI letter denied Plaintiffs' request for expedited processing and granted Plaintiffs' request for a fee waiver.

45. To date, the ODNI has neither released responsive records nor explained its basis for withholding them. Plaintiffs have exhausted all administrative remedies because the ODNI has failed to comply with the time limit for responding to the Request under the FOIA.

Central Intelligence Agency

46. By letter dated January 4, 2023, the CIA acknowledged receipt of the Request and assigned it tracking number F-2023-00495.

47. The CIA letter denied Plaintiffs' request for expedited processing and granted Plaintiffs' request for a fee waiver.

48. To date, the CIA has neither released responsive records nor explained its basis for withholding them. Plaintiffs have exhausted all administrative remedies because the CIA has failed to comply with the time limit for responding to the Request under the FOIA.

<u>Department of Justice</u>

49. By email dated January 17, 2023, the DOJ acknowledged receipt of the request and assigned it tracking number 23-116.

50. The DOJ email denied Plaintiffs' request for expedited processing and did not comment on Plaintiffs' request for a fee waiver.

51. To date, the DOJ has neither released responsive records nor explained its basis for withholding them. Plaintiffs have exhausted all administrative remedies because the DOJ has failed to comply with the time limit for responding to the Request under the FOIA.

**CLAIMS FOR RELIEF**

52. The failure of Defendants to make a reasonable effort to search for records responsive to the Request violates the FOIA, 5 U.S.C. § 552(a)(3), and Defendants' corresponding regulations.

53. The failure of Defendants to promptly make available the records sought by the Request violates the FOIA, 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(A), and Defendants' corresponding regulations.

54. The failure of Defendants to process Plaintiffs' request expeditiously and as soon as practicable violates the FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendants' corresponding regulations.

55. The failure of Defendants to grant Plaintiffs' request for a waiver of search, review, and duplication fees violates the FOIA, 5 U.S.C. §§ 552(a)(4), (a)(6), and Defendants' corresponding regulations.

56. The failure of Defendants' to grant Plaintiffs' request for a limitation of fees violates the FOIA, 5 U.S.C. §§ 552(a)(4), (a)(6), and Defendants' corresponding regulations.

**REQUESTED RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A.   Order Defendants to conduct a thorough search for all responsive records;

B.   Order Defendants to immediately process and release any responsive records;

C.   Enjoin Defendants from charging Plaintiffs search, review, or duplication fees for the processing of the Request;

D.   Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

E.   Grant such other relief as the Court deems just and proper.

Respectfully submitted,

*S/ Patrick Toomey*
Patrick Toomey
Sarah Taitz (application for admission pending)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
ptoomey@aclu.org

*S/ Gabriella Larios*
Gabriella Larios
Perry Grossman
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, New York 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
glarios@nyclu.org

*Counsel for Plaintiffs*

February 3, 2023